IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JEFFREY RYAN, individually and as
successor-in-interest to El Morro Ranches, Inc.,

    Plaintiff,

vs.                                                                                     Civ. No. 99-1337 M/RLP

Louis M. Druxman,

    Defendant.

### MEMORANDUM OPINION AND ORDER

On May 15, 2000, the Defendant filed a Motion for Summary Judgment (Doc. No. 12). After a careful review of the briefs and the relevant law, I have determined that Defendant's motion for summary judgment is not well-taken and should be denied.

I. Background

In 1986 the Plaintiff acquired El Morro Ranches, Inc. (Ranches) from his father. The Plaintiff was the owner and sole shareholder of the Ranches from 1986 to 1989. He was also a director and officer of the Ranches. Janet Reed managed the Ranches and the Defendant provided legal counsel to the Ranches. Up until the end of 1988 or the beginning of 1989, the Plaintiff, Reed, and the Defendant believed that a mortgage encumbered all of the Ranches' property. In the latter part of 1988, the Plaintiff realized that he would be unable to meet the Ranches mortgage payment of approximately $50,000.

On January 12, 1989, the Plaintiff and Reed entered into an agreement for her to pay the $50,000 mortgage payment. In exchange for the payment and some other consideration, the Plaintiff agreed to transfer the assets of the Ranches to a new corporation, El Morro Valley Land Company, Ltd. (Land Company). The Plaintiff was given a 49% interest in the Land Company



while Reed owned the remainder of the stock. The Plaintiff was a director and officer of the Land Company.

The Plaintiff alleges that he entered into this agreement because the Defendant stated that this proposal was the best he could expect to save the Ranches from a foreclosure of the mortgage. The Plaintiff also alleges that despite this advice, the Defendant knew shortly before the Ranches assets were transferred to the Land Company that the Ranches owned 680 acres of unencumbered land which could have been used to meet the imminent mortgage payment. The Plaintiff contends that the transfer of the Ranches assets to the Land Company was very disadvantageous to him because the apparent net worth of the Ranches was over one million dollars.

At a February 19, 1990 joint directors/shareholders meeting of the Land Company the participants including the Plaintiff discussed the cash sale of the unencumbered 680 acres. In 1997, the Plaintiff sued Reed and the Land Company in state court for fraud and related claims arising from Reed's management of the Land Company. In May 1997 during the course of discovery in that lawsuit, Sonny Jim James, a real estate agent for the Ranches, stated that he told both Reed and the Defendant about the unencumbered land shortly before the Plaintiff transferred the Ranches assets to the Land Company.[1] This was the first time the Plaintiff learned that the Ranches owned unencumbered land.

---

[1] The Defendant testified in a deposition that he learned about the unencumbered land shortly after the Plaintiff transferred the Ranches assets to the Land Company. Deposition of Louis Druxman at 55, Exhibit 4 (attached to Plaintiff's Response Brief in Opposition to Defendant's Motion for Summary Judgment, filed May 15, 2000 (Doc. No. 14)).

2

The Plaintiff now brings three causes of actions against the Defendant. The Plaintiff alleges that by not advising him about the unencumbered land the Defendant engaged in professional malpractice, breached his fiduciary duty to the Plaintiff, and made a fraudulent misrepresentation to the Plaintiff. The Defendant argues that summary judgment is appropriate in this case because the malpractice claim is untimely under the statute of limitations and that all of the Plaintiff's claims are untimely under the doctrine of laches.[2]

II. Summary Judgment Standard

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). When applying this standard, we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Applied Genetics Intl, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Only then does the burden shift to the non-movant to come forward with evidence showing that there is a genuine issue of material fact. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). The non-moving party may not avoid summary judgment by resting upon the mere allegations or denials of his or her pleadings. *Id.*

---

[2] In his reply brief, the Defendant moves to strike certain affidavits and depositions presented by the Plaintiff in his opposition to the motion for summary judgment. By making his motion in a reply brief, the Defendant precludes the Plaintiff from having an opportunity to respond to that motion. Consequently, I will not address the Defendant's motion to strike unless it is set forth in a proper motion.

3

III. Discussion

    A. The Malpractice Claim and the Statute of Limitations

The New Mexico courts have not yet decided whether a three or four year statute of limitations applies to legal malpractice claims. *Delta Automatic Systems, Inc. v. Bingham*, 1999-NMCA-029 ¶22, 126 N.M. 717, *cert. denied*, No. 25,576 (1999). Giving the Plaintiff the benefit of the doubt, I will apply the four year statute of limitations. Under the four year statute of limitations the Plaintiff's malpractice claim is timely if it accrued after November 18, 1995.

"[T]he limitations period for legal malpractice commences when (1) the client sustains actual injury and (2) the client discovers, or through reasonable diligence should discover, the facts essential to the cause of action." *Sharts v. Natelson*, 118 N.M. 721, 724, 885 P.2d 642, 645 (1994). Although the question of when a client discovered an attorney's malpractice and the resulting injury is usually a question of fact, "'where the undisputed facts show that [the client] knew, or should have been aware of the negligent conduct on or before a specific date, the issue may be decided as a matter of law.'" *Id.* at 726, 885 P.2d at 647 (quoting *Brunacini v. Kavanagh*, 117 N.M. 122, 127, 869 P.2d 821, 826 (Ct. App. 1993), *cert. denied*, 117 NM. 215, 870 P.2d 753 (1994)). It is undisputed in this case that the alleged actual injury to the Plaintiff occurred on January 12, 1989 when the Plaintiff transferred the Ranches assets to the Land Company. It is also undisputed that the Plaintiff did not actually know about the unencumbered land until after November 1995. The issue then is whether the Plaintiff through reasonable diligence should have known about the unencumbered land prior to the transfer of the Ranches assets in January 1989, or at the latest, in February 1990 when the cash sale of the unencumbered land was first discussed.

4

The Defendant argues that the Plaintiff had constructive knowledge of the existence of the unencumbered land by virtue of his being an officer and director of both the Ranches and the Land Company. The Defendant also argues that as the sole shareholder of the Ranches as well as an officer, director and shareholder of the Land Company, the Plaintiff had access to all of the documents and records of the Ranches. The Defendant further argues that the Plaintiff consulted with his father prior to entering the asset transfer agreement and that his father should have alerted the Plaintiff to the existence of the unencumbered land. The Defendant notes that the Plaintiff holds a Master's of Business Administration degree and is a licensed real estate broker. With that educational and business background, the Defendant asserts that the Plaintiff should have known in February 1990 that a cash sale of the unencumbered lands could not be accomplished if there was an existing mortgage on those lands. Finally, the Defendant contends that because the Plaintiff had serious concerns about how the Land Company was being managed, he should have investigated the Land Company further and found out about the unencumbered land.

1. Constructive Knowledge as a Corporate Director and Officer

The Defendant argues essentially that the Plaintiff as a director and officer of both the Ranches and the Land Company "must not be allowed to remain purposefully ignorant of matters affecting the corporation and later blame others for his ignorance and neglect." Memorandum Brief in Support of Motion for Summary Judgment at 12, filed May 15, 2000 (Doc. No. 13). In New Mexico, "'[i]f the state of mind of a principal in a transaction is a factor, a notification by a third person giving information to an agent who does not communicate it to the principal does not operate with like effect as a similar notification given to the principal.'"

5

*Lihosit v. I & W, Inc.*, 121 N.M. 455, 460, 913 P.2d 262, 267 (Ct. App.), *cert. denied*, 121 N.M. 444, 913 P.2d 251 (1996)(quoting *Restatement (Second) of Agency* at §268 cmt. d (1957)). Here, James states he informed Reed and the Defendant about the unencumbered land prior to the transfer of the Ranches assets in January 1989. In other words, Plaintiff's agent (analogous to a third party in this situation) informed two of the Plaintiff's agents regarding the existence of the unencumbered land. Those two agents did not communicate this information to the Plaintiff. Under *Lihost*, the Plaintiff cannot be considered to have been notified of this information. Consequently, the Plaintiff could not have constructive knowledge of the unencumbered land.

    2. Access to Documents and Records

The Defendant also contends that since the Plaintiff had access to the Ranches' documents and records he should have been familiar with their content and known that there was unencumbered land. "[W]here ignorance of facts arise from a principal's own failure to investigate and the circumstances are such as to put a reasonable man upon inquiry, he may be held to have ratified [the act] even though he may have lacked full knowledge." *See-Tee Mining Corp. v. National Sales, Inc.*, 76 N.M. 677, 680, 417 P.2d 810, 813 (1966). In this case, the Plaintiff states that he had no idea that he owned unencumbered land until May 1997. The circumstances in late 1988 and January 1989 were not sufficient to have alerted a reasonable man to search for unencumbered land. In fact, it is undisputed that neither Reed nor the Defendant knew that the Ranches included unencumbered land until James allegedly told them prior to the transfer of the Ranches assets. Under these circumstances, the Plaintiff was not put on notice to investigate the Ranches' documents and records.

3. Plaintiff's Consultation with his Father

The Defendant argues that because the Plaintiff's father bought the unencumbered land before the Plaintiff acquired it the father would have known that those lands were indeed unencumbered. Accordingly, the Defendant contends that any subsequent discussions between the Plaintiff and his father about transferring the Ranches assets would have necessarily brought up the existence of the unencumbered land. The Plaintiff's father, however, states in an affidavit that he did not know about the unencumbered land until May 1997. Affidavit of Roy Ryan at ¶5, Exhibit 2 (attached to Plaintiff's Response Brief in Opposition to Defendant's Motion for Summary Judgment, filed May 14, 2000 (Doc. No. 14). The evidence on this point raises a genuine question of material fact and so cannot form a basis for summary judgment.

4. The February 1990 Discussion of a Cash Sale of the Unencumbered Land

The Defendant further contends that with the Plaintiff's educational background and real estate experience the Plaintiff should have been alerted to investigate whether the 620 acres to be sold for cash in 1990 were unencumbered. The Plaintiff stated, and the Plaintiff's real estate expert confirms, that a cash sale of land subject to a mortgage can be made so long as the mortgagee releases the mortgage. Deposition of Jeffrey S. Ryan at 72-73, Exhibit B (attached to Memorandum Brief in Support of Motion for Summary Judgment, filed May 15, 2000 (Doc. No. 13)); Affidavit of George Lambert at ¶3 (attached to Plaintiff's Second Rule 56(f) Supplemental Evidentiary Submission in Opposition to Defendant's Motion for Summary Judgment on Statute of Limitations, filed Aug. 2, 2000 (Doc. No. 35)). Since the Plaintiff assumed that all of the Ranches land was encumbered and the Plaintiff knew that encumbered land can be sold for cash if the proper releases are made, the Plaintiff had no reason to further investigate the land to

7

determine if it was unencumbered.

### 5. Plaintiff's Concerns About the Management of the Land Company

Finally, the Defendant asserts that because the Plaintiff had serious concerns about how the Land Company was being managed he should have investigated the Land Company and discovered the existence of the unencumbered land. I fail to see how investigating the Land Company for mismanagement would lead the Plaintiff to investigate the Ranches' mortgage, especially when the Plaintiff himself transferred the Ranches assets including any mortgage to the Land Company. The Defendant's argument based on the Plaintiff's concerns with the Land Company's management is not relevant to whether reasonable diligence by the Plaintiff would have led to the discovery of the unencumbered land. For all of the above reasons, I find that the Defendant has not shown that summary judgment is appropriate on the issue of an untimely claim for legal malpractice.

### B. Laches

"Laches will lie when, in addition to other factors, there has been an unexplainable delay of such duration in asserting a claim as to render enforcement of such claim inequitable." *Skaggs v. Conoco, Inc.*, 1998-NMCA-061 ¶14, 125 N.M. 97, *cert. denied*, No. 25,075 (1998) (citation omitted). To establish laches a person must demonstrate "(1) conduct on the part of another which forms the basis for the litigation in question; (2) delay in the assertion of the complaining party's rights; (3) lack of knowledge or notice on the part of the defendant that the complaining party would assert such rights; and (4) injury or prejudice to the defendant in the event relief is accorded to the complaining party or the suit is not barred." *Id.* Anytime a party makes claim in equity that party must do so with clean hands. *Danley v. City of Alamogordo*, 91

N.M. 520, 522, 577 P.2d 418, 420 (1978). The decision to apply laches is a discretionary one. *Skaggs* at ¶13.

The delay in this case is not unexplainable. The Plaintiff did not know he had a case until May 1997. Moreover, the Defendant's own actions in concealing the existence of the unencumbered land caused the undue delay in filing this lawsuit. In addition, there is a genuine issue of material fact as to whether the Defendant had knowledge of the Plaintiff's potential claims since 1989. These circumstances do not justify an application of the doctrine of laches.

IT IS ORDERED that the Defendant's Motion for Summary Judgment (Doc. No. 12) is denied.

_____
SENIOR UNITED STATES DISTRICT JUDGE

| | |
|---|---|
| Counsel for Plaintiff: | Benjamin Silva, Jr. and Richard A. Allen<br>Silva, Rieder & Maestas<br>Albuquerque, New Mexico |
| Counsel for Defendant: | R. Nelson Franse<br>Rodey, Dickason, Sloan, Akin & Robb<br>Albuquerque, New Mexico |

9